**THE BASIL LAW GROUP, P.C.**
Robert J. Basil, Esq. (025721988)
David A. Cohen, Esq. (045581990)
Sean Collier, Esq. (027192010)
125 West 31st Street, Suite 19-B
New York, New York 10001
Telephone: (917) 994-9973
robertjbasil@rjbasil.com
davidacohen@rjbasil.com
seancollier@rjbasil.com
*Attorneys for Plaintiff Fintech Consulting LLC*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FINTECH CONSULTING LLC d/b/a APTASK,<br><br>            Plaintiff,<br><br>    vs.<br><br>TSR, INC.; QAR INDUSTRIES, INC.; ROBERT E. FITZGERALD; and BRADLEY TIRPAK,<br><br>            Defendants. | Civil Action No.<br><br><br>CIVIL ACTION<br><br>**COMPLAINT** |

FINTECH CONSULTING LLC, by its attorneys, The Basil Law Group, P.C., by way of complaint against the Defendants, says:

### PARTIES

1.    Plaintiff Fintech Consulting LLC (**"Fintech"**), is a limited liability company organized pursuant to the laws of the State of New Jersey.

2.    Defendant TSR, Inc. (**"TSR"**), is a corporation incorporated pursuant to the laws of the State of Delaware, with its principal place of business at 400 Oser Avenue, Hauppauge, New York 11788.

3. Defendant QAR Industries, Inc. ("**QAR**"), is a corporation incorporated pursuant to the laws of the State of Texas, with its principal place of business at 101 SE 25th Avenue, Mineral Wells, Texas 76067.

4. Defendant Robert E. Fitzgerald ("**Fitzgerald**") is an individual resident of the State of Texas with a business address of 101 SE 25th Avenue, Mineral Wells, Texas 76067.  At all times relevant, Fitzgerald has been a director and shareholder of TSR, and therefore he is an insider of TSR.  Additionally, at all times relevant, Fitzgerald has the President, a director, and/or a majority shareholder of QAR.

5. Defendant Bradley Tirpak ("**Tirpak**") is an individual resident of the State of Colorado with an address of 101 East Bleeker Street Unit A, Aspen CO 81611.  At all times relevant, Tirpak has been, among other things, a director, the chairman of the board of directors, and a shareholder of TSR, and therefore he is an insider of TSR.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's principal causes of action allege violation of the Securities Exchange Act of 1934 (15 U.S.C. § 78j *et seq.*), and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5), and therefore arise under the laws of the United States.

7. This Court has jurisdiction over Plaintiff's state-law causes of action pursuant to 28 U.S.C. § 1367 because those causes of action arise from the same transaction and the same conduct among the same parties as form the bases of the cause of action arising under the laws of the United States, and differ only insofar as they proceed under causes of action based in state law.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, among other things, Plaintiff is an entity which maintains its principal place of business in Iselin, northern Middlesex County, New Jersey, and Plaintiff alleges that defendants caused it harm with respect to a contract that Plaintiff was induced to enter while operating there.

## FACTS

### Plaintiff sells its TSRI shares

9. TSR is a publicly-traded company whose shares are listed on the NASDAQ exchange under ticker symbol TSRI.

10. At all times relevant to this case, and before February 2021, Fintech was a holder, of record and beneficially, of 376,000 shares of the issued and outstanding common stock of TSR.

11. Beginning in or about late 2020, Fintech expressed to one or more of TSR's directors and officers that Fintech was interested in selling its shares of TSR. However, during that time period, no sale was arranged.

12. On January 27, 2021, Fitzgerald contacted Fintech's president, Taj Haslani, to indicate that he had "recently sold a building" and was "looking for places to put the money. Fitzgerald asked whether Fintech was still interested in selling its TSR shares. Haslani responded that Fintech was indeed interested, that any sale would have to be of all of Fintech's shares, and that Fitzgerald should make an offer if interested.

13. On that same date, TSRI was trading on the public marketplace (NASDAQ) at between $7.12 and $7.63 per share. This pricing was in line with the share prices reported during the preceding two months, which were between $6.20 and $7.85.

14. On that same afternoon of January 27, 2021, Fitzgerald proposed to Haslani a sale of Fintech's stock for a per-share price of $7.00, and, notably, asked whether the transaction could close "before Feb 5???" Friday, February 5th was only seven business days away.

15. Haslani countered with a demand for no less than $7.25, and Fitzgerald subsequently agreed.

16. Fitzgerald told Haslani that Fitzgerald had also notified TSR's directors and senior management that the transaction appeared imminent and offered them the opportunity to participate. TSR's board chairman, defendant Tirpak, indicated his desire to do so.

17. By the next afternoon, Fitzgerald sent to Fintech a proposed Share Purchase Agreement showing QAR and defendant Tirpak as the purchasers of Fintech's 376,000 shares. Fitzgerald's email transmitting the proposed agreement stated, among other things, "Hopefully we can wind things up quickly."

18. Fitzgerald, Tirpak, Fintech, and Fintech's (undersigned) counsel worked on the draft purchase agreement over the weekend, with Fitzgerald expressing his desire to execute the final agreement on Monday, February 1, and to close the transaction the next business day.

19. As a result of Fitzgerald's urgings, the parties executed the final Share Purchase Agreement around noon on February 1, 2021 (the **"SPA"**).

20. Among other provisions in the SPA, the executed SPA provided that QAR and Tirpak would pay the $2,726,000 purchase price to Fintech for its 376,000 shares of TSRI, with Tirpak paying $199,998.50 to acquire 27,586 shares and QAR paying $2,526,001.50 to acquire 348,414 shares.

21. These shares and funds were exchanged the following day, February 2, 2021.

- 5 -

**Defendants' Undisclosed Stock Option Exercises**

22. On February 1, 2021, the same day that all parties were executing the SPA at the insistence of Fitzgerald, five highly placed officers and/or members of TSR's board of directors, including Fitzgerald, and Tirpak each filed an SEC Form 4 with the SEC reporting for the first time the exercised options, each exercise performed at a purchase price of zero dollars.

23. These disclosures indicated that each of these individuals had previously exercised the options as of January 28, 2021.

24. On that date of exercise, January 28, 2021, Defendants and Plaintiff were still negotiating the form of the SPA, which was signed only on February 1, 2021.

25. At no time during those negotiations did any Defendant or any other person disclose to Plaintiff, NASDAQ, the SEC, or to the members of the investing public that the any of these parties were exercising their options

26. At no time during those negotiations did any Defendant or any other person disclose to Plaintiff, NASDAQ, the SEC, or to members of the investing public the non-public information that caused the insiders to simultaneously exercise their options.

27. Plaintiff did not otherwise become aware of that large exercise of options until after it was disclosed in SEC filings on the same date that Plaintiff, QAR, and Tirpak executed the SPA.

28. Despite following the relevant public disclosures available to it, Plaintiff has been unable to date to ascertain the non-public information that caused the insiders to simultaneously exercise their options.

29. The insiders' options were exercised as follows:

Exercise of Options on January 28, 2021

| Individual | Status | Options exercised | Date of first disclosure |
|---|---|---|---|
| Howard T. Eriksen | Director of TSR | 30,000 | February 1, 2021 |
| Robert E. Fitzgerald | Director of TSR | 30,000 | February 1, 2021 |
| Thomas C. Salerno | Chief Executive Officer of TSR | 40,000 | February 1, 2021 |
| John G. Sharkey | Senior Vice President of TSR | 25,000 | February 1, 2021 |
| Bradley M. Tirpak | Director of TSR | 30,000 | February 1, 2021 |

30. These persons' exercise was an event that market participants and observers would find meaningful.

31. These transactions, both individually and as a group, constituted a significant, coordinated exercise of options to purchase shares of TSRI by multiple insiders of that company as of the same date.

32. Acquisition of a company's shares by multiple insiders of that same company on the same date is an occurrence generally known to signal to the market that the insiders have good reason to expect an increase in the value of the company's shares.[1]

33. A common reaction of the market to such a signal, once the signal has been evaluated by the investing public, is to value the company's shares significantly more highly, leading to increased demand and a concomitant and substantial increase in share price.

---

[1] Indeed, in articles advising buyers to watch for insider activity, legendary investor Peter Lynch is frequently quoted as observing that "insiders might sell their shares for any number of reasons, but they buy them for only one: they think the price will rise."

34. At all times relevant, each of the Defendants knew that this reaction is a recognized phenomenon and/or was highly likely to be the market's response.

35. At all times relevant, Defendants also knew that a coordinated exercise of options as significant as the one they performed on January 28, 2021, would be highly likely to lead to an increase in the value of TSRI stock, as soon as the market detected it.

36. That the individual Defendants had exercised their options on January 28, 2021, was therefore an item of information that was material to the transaction for sale of TSRI stock, and to any potential party contemplating a transaction for the sale of TSRI stock, such as the transaction that Plaintiff was negotiating with Fitzgerald, QAR, and Tirpak at the very time of the exercise, and which was memorialized in the SPA just a few days later.

37. TSR's board of directors and senior management had been aware since at least January 27, 2021, that Fintech was in negotiations to sell all of its 376,000 shares of TSRI common stock to TSR insiders.

38. Despite the foregoing, no defendant disclosed to Plaintiff that the substantial exercise of options had occurred prior to the sale of TSRI stock to Plaintiff.

39. Instead, Defendants intentionally allowed Plaintiff to enter the SPA in ignorance of that information, securing a bargain price of $7.25 for the purchase of Plaintiff's TSRI shares before the news of the options exercise could hit the market and drive the stock's value higher.

40. Defendants' concealment of this material information led Plaintiff to forego all opportunities to benefit from the possibility of an imminent rise in the stock price, of which Defendants were well aware but chose to keep Plaintiff uninformed for their considerable financial benefit.

41. The resulting stock movements before, during, and resulting from the Defendants' exercises are as follows:

TSRI STOCK ACTIVITY 1-22-2021 THROUGH 2-5-2021

| DATE | OPEN | HIGH | LOW | CLOSE | VOLUME |
|---|---|---|---|---|---|
| Feb 05, 2021 | 9.89 | 18.73 | 9.80 | 12.88 | 363,000 |
| Feb 04, 2021 | 9.29 | 9.29 | 8.68 | 8.71 | 15,200 |
| Feb 03, 2021 | 9.25 | 9.48 | 8.93 | 8.95 | 22,100 |
| Feb 02, 2021 | 8.75 | 9.43 | 8.75 | 9.32 | 12,800 |
| Feb 01, 2021 | 8.63 | 9.25 | 8.00 | 8.59 | 8,500 |
| Jan 29, 2021 | 8.00 | 8.65 | 7.73 | 8.49 | 15,800 |
| Jan 28, 2021 | 7.42 | 8.00 | 7.36 | 7.75 | 15,400 |
| Jan 27, 2021 | 7.12 | 7.65 | 7.12 | 7.63 | 16,500 |
| Jan 26, 2021 | 7.07 | 7.31 | 7.02 | 7.12 | 18,800 |
| Jan 25, 2021 | 7.11 | 7.32 | 6.86 | 7.06 | 19,100 |
| Jan 22, 2021 | 6.55 | 7.06 | 6.55 | 7.06 | 2,900 |

42. Had Defendants given Plaintiff the aforementioned, material non-public information, Fintech would have been able to assess the probability of an imminent rise in the stock price resulting from this substantial insider activity. Plaintiff could then have negotiated for a higher sale price, or elected to retain its shares in the reasonable expectation of benefiting from the price increase.

43. The undisclosed non-public information that caused the insiders to simultaneously exercise their option proved valuable, as the price of the TSRI stock has continued to trade well above the price at the time of the decision to exercise through the date of this Complaint.

44. Defendants' knowing omission of material information deprived Plaintiff of this opportunity and caused Plaintiff financial damages in excess of $75,000.

## COUNT I
## Violation of Section 10(b) of the Exchange Act of 1934

45. Plaintiff incorporates all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

46. Defendants engaged in material misrepresentations and omissions of information regarding the Defendants' undisclosed exercise of insider stock options as set forth herein at paragraphs 9 through 43 of this Complaint.

47. Defendants' aforementioned misrepresentations and omissions of information regarding the Defendants' undisclosed exercise of insider stock options were made and motivated by Defendants' wrongful and conscious misbehavior and intent to deceive and to commit fraud for the purpose of inducing Plaintiff to sell his shares of TSRI at a bargain price.

48. Defendants' aforementioned material misrepresentations and omissions were justifiably relied upon by Plaintiff in connection with Plaintiff's sale of the shares of TSRI at a bargain price to Plaintiff's detriment.

49. That the transactions and agreements represented by the wrongfully executed SPA are unenforceable and a nullity *ab initio*.

50. Plaintiff has suffered financial damage, proximately caused by the wrongs alleged herein, in an amount to be proved at trial.

## COUNT II
## COMMON LAW FRAUD

51. Plaintiff incorporates all of the allegations contained in the previous paragraphs of the Complaint as of fully set forth herein.

52. Defendants engaged in material misrepresentations and omissions of information regarding the Defendants' undisclosed exercise of their stock options as set forth herein at paragraphs 9 through 41 of this Complaint.

53. Defendants' aforementioned misrepresentations and omission of information regarding the Defendants' undisclosed exercise of their stock options were made and motivated by Defendants' wrongful and conscious misbehavior and intent to deceive and to commit fraud for the purpose of inducing Plaintiff to sell his shares of TSRI.

54. Defendants' aforementioned material misrepresentations and omissions were justifiably relied upon by Plaintiff in connection with Plaintiff's sale of the shares of TSRI at a bargain price to Plaintiff's detriment.

55. That the transactions and agreements represented by the wrongfully executed SPA are unenforceable and a nullity *ab initio*.

56. Plaintiff has suffered financial damage, proximately caused by the wrongs alleged herein, in an amount to be proved at trial.

WHEREFORE, plaintiff Fintech Consulting LLC demands:

a. Judgment declaring the transactions represented by the SPA a nullity *ab initio* and returning the Plaintiff's shares of TSRI;

b. Judgment cancelling the SPA *ab initio* and returning Plaintiff's shares of TSRI in exchange for return of the purchase price;

c. Judgement unwinding the purchase and sale of the shares of TSRI between Plaintiff and Defendants.

d. Compensatory damages in favor of Plaintiff and against Defendants for all damages sustained as a result of Defendants' wrongful acts and omissions, in an amount to be proven at trial;

e. Punitive damages in favor Plaintiff and against Defendants for Defendants' willful and wanton acts, in an amount to be determined at trial;

f. Pre-judgment interest;

g. Costs of suit including attorneys' fees; and

h. Such other relief as this Court finds appropriate.

THE BASIL LAW GROUP. P.C.
*Attorneys for plaintiff, Fintech Consulting LLC, d/b/a ApTask*

By: ___/s/ROBERT J. BASIL_____
Robert J. Basil (RB3410)

Dated:  November 23, 2021