<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FINTECH CONSULTING LLC d/b/a APTASK,<br><br>*Plaintiff*,<br><br>v.<br><br>TSR, INC.; QAR INDUSTRIES, INC.; ROBERT E. FITZGERALD; and BRADLEY TIRPAK,<br><br>*Defendants*. | Civil No.: 21-cv-20181 (KSH) (AME)<br><br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

  I.  **Introduction**

In this matter, plaintiff Fintech Consulting LLC d/b/a Aptask ("Fintech") has sued defendants TSR, Inc. ("TSR"), QAR Industries, Inc. ("QAR"), Robert E. Fitzgerald ("Fitzgerald"), and Bradley Tirpak ("Tirpak," together with TSR, QAR, and Fitzgerald, "defendants") for common law fraud and federal securities laws violations arising from a share purchase agreement in which Fintech agreed to sell its shares of TSR common stock to defendants. Presently before the Court is defendants' motion (D.E. 25) to dismiss the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 9(b). The motion is fully briefed, and the Court decides it without oral argument pursuant to L. Civ. R. 78.1.

  II.  **Background**

According to the first amended complaint (D.E. 18, FAC), defendant TSR is a publicly traded Delaware company whose shares are listed on the NASDAQ exchange. (*Id.* ¶¶ 2, 9.) In late 2020, plaintiff Fintech relayed to certain TSR officials that it was interested in selling its shares of TSR stock. (*Id.* ¶ 25.) On January 27, 2021, TSR director and shareholder defendant Fitzgerald reached out to Fintech's president, Taj Haslani, and asked whether Fintech was still

1

interested in selling its shares. (*Id.* ¶ 26.) Haslani responded in the affirmative and invited Fitzgerald to make an offer. (*Id.*)

Later that day, Fitzgerald proposed a $7.00 per share purchase price. (*Id.* ¶ 28.) Haslani countered for $7.25 per share, which Fitzgerald accepted.[1] (*Id.* ¶ 29.) The next afternoon, Fitzgerald emailed Fintech expressing his desire to "wind things up quickly" and attached a draft Share Purchase Agreement (the "SPA") to the email. (*Id.* ¶ 31; *see* D.E. 27 at Ex. A, SPA.) The attached SPA designated Fintech as the seller and defendants QAR (Fitzgerald's company) and Tirpak (TSR's board chairman) as the buyers, and memorialized Fintech's agreement to sell its 376,000 shares of TSR common stock for $7.25 per share for a total consideration of $2,726,000.00. (SPA at 1, § 1.2; *see id.* at Sched. A.) The parties executed the SPA on February 1, 2021. (FAC ¶ 45.)

Fintech alleges that defendants fraudulently concealed certain information "in order to prevent Fintech from obtaining material information that would allow it to better assess the value of [its] shares." (*Id.* ¶ 44.) According to an SEC Form 8-K filed on February 1, 2021, which Fintech alleges it was unaware of, TSR had "adopted a form restricted stock grant notice and restricted stock purchase agreement for restricted stock awards to be granted under the Company's 2020 Equity Incentive Plan." (*Id.* ¶ 33.) Accordingly, it was not until February 1, 2021 that TSR had disclosed to any non-insider: (i) the dates of any proposed restricted stock grants; (ii) the number of shares to be granted; and (iii) all other pertinent details of the grants. (*Id.* ¶ 34.) Also, TSR's board granted restricted stock awards under the 2020 Equity Incentive Plan to five highly placed TSR officers and to all three members of TSR's board of directors,

---

[1] On January 27, 2021, TSR stock was trading on NASDAQ between $7.12 and $7.63 per share, which was consistent with the prices reported during the preceding two-month period. (*Id.* ¶ 27.)

including Fitzgerald and Tirpak.  (*Id.* ¶¶ 36-37.)  These grants, which totaled 155,000 shares of common stock at a purchase price of zero dollars, were not made public until February 1, 2021, when TSR filed Form 4s with the SEC.  (*Id.* ¶¶ 38-40, Ex. E.)  The first amended complaint pleads that at no time did defendants "mention[] or disclose[] to Fintech, NASDAQ, the SEC, or to members of the investing public, either the preparation of the draft Restricted Stock Grant Notice or the Restricted Stock Purchase Agreement, their approval by TSR's board, or the grant of the 155,000 restricted stock awards."  (*Id.* ¶ 40.)  It further pleads that "at no time during Fintech's negotiations with [d]efendants did any [d]efendant or any other person disclose to Fintech, NASDAQ, the SEC, or to the members of the investing public the non-public information that caused TSR to make these simultaneous grants to these insiders."  (*Id.* ¶ 41.)

Fintech filed a two-count complaint in this Court on November 23, 2021, asserting violations of Section 10(b) of the Exchange Act of 1934 and the common law.  (D.E. 1.)  Defendants moved to dismiss the original complaint under Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 9(b) on February 9, 2022, but that motion was terminated when Fintech filed the operative first amended complaint on March 2, 2022.  (D.E. 11, 18.)  Defendants renewed their motion to dismiss on April 19, 2022 and raised two main arguments in support: first, Fintech's claims are not properly before this Court both because of the Delaware forum selection clause in the SPA and because there is no personal jurisdiction over defendants; and second, the Exchange Act and common law fraud claims are insufficiently alleged under Rules 12(b)(6) and 9(b).  (D.E. 26, Mov. Br.; D.E. 29, Reply Br.)  Fintech filed opposition on May 13, 2022, arguing that forum selection clause notwithstanding, this Court is the proper forum to address its well-pled claims.  (D.E. 28, Opp. Br.)

### III. Discussion

#### A. Forum Selection Clause

Defendants first argue that this action should be dismissed because there is a valid and enforceable Delaware forum selection clause in the SPA. Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 130 (D.N.J. 2020) (McNulty, J.) (quoting *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991)).[2] A forum selection clause is "unreasonable" where the defendant can make a "strong showing" either that the selected forum is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court" or that the clause was procured through "fraud or overreaching." *Foster*, 933 F.2d at 1219 (internal citations and quotations omitted).

Here, the SPA's forum selection clause provides in pertinent part as follows:

> *Submission to Jurisdiction.* Each of the Parties . . . (b) **irrevocably and unconditionally consents and submits itself and its properties and assets in any action, suit or proceeding arising out of or with respect to this Agreement and the transactions contemplated hereby to the exclusive general jurisdiction of the Court of Chancery of the State of Delaware and any state appellate court therefrom within the State of Delaware (or, if the Court of Chancery of the State**

---

[2] Defendants argue that Delaware state law applies to the enforceability of the forum selection clause because the SPA contains a Delaware choice-of-law provision. (*See* Mov. Br. at 10-11.) In opposition, Fintech does not address the SPA's choice-of-law provision and instead applies both federal and state law in its analysis. (*See* Opp. Br. at 7-12.) Defendants are correct that the parties agreed to be bound by Delaware law. (*See* SPA § 5.10 ("This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware."); *see also Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 n.5 (3d Cir. 2017) (explaining that court sitting in federal question jurisdiction applied law specified in choice-of-law provision without conducting choice-of-law analysis).) However, it is well settled that "[f]ederal law controls the question of whether to enforce a forum selection clause" and state law governs "the scope of a forum selection clause—that is, 'whether the claims and parties involved in the suit are subject to the clause.'" *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (quoting *Collins*, 874 F.3d at 180). The Court's analysis reflects these principles.

> ***of Delaware declines to accept jurisdiction over a particular matter, any federal court within the State of Delaware (the "Chosen Courts") in the event that any dispute or controversy arises out of this Agreement or the transactions contemplated hereby***; (c) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from the Chosen Courts; ***(d) agrees that any action, suit or proceeding arising in connection with this Agreement or the transactions contemplated hereby shall be brought, tried and determined only in the Chosen Courts***; (e) waives any objection that it may now or hereafter have to the venue of any such action, suit or proceeding in the Chosen Courts or that such action, suit or proceeding was brought in an inconvenient court and agrees not to plead or claim the same; and ***(f) agrees that it will not bring any action, suit or proceeding relating to this Agreement or the transactions contemplated hereby in any court other than the Chosen Courts***. Each of Parties agrees that a final judgment in any action, suit or proceeding in the Chosen Courts shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

(SPA § 5.11 (emphases added).)

The forum selection clause is clear and unambiguous: the parties to the SPA—namely, plaintiff Fintech and defendants QAR (through Fitzerald) and Tirpak—expressly agreed to bring any action arising out of the SPA or the transactions contemplated by it in the Delaware Chancery Court or, if the Chancery Court declines to exercise jurisdiction, any federal court in Delaware. Equally clear is the fact that the instant lawsuit arises out of the SPA or, at the very least, the sale of shares contemplated by it. (*See* FAC ¶¶ 70, 76 (Exchange Act and common law fraud causes of action premised on material misrepresentations and omissions that induced Fintech into "wrongfully executed SPA").) In apparent recognition of the forum selection clause's applicability to this lawsuit, Fintech argues that dismissal in favor of a Delaware forum would be improper because the Delaware Chancery Court "has no jurisdiction to entertain claims pled under federal securities law." (Opp. Br. at 6.) It relies on *Troy Corp. v. Schoon*, 2007 WL 949441 (Del. Ch. Mar. 26, 2007), where the Delaware Chancery Court addressed a forum selection clause that provided as follows:

5

> ***Any lawsuits with respect to, in connection with or arising out of this agreement shall be brought in a court for the Southern District of New York*** and the parties hereto consent to the jurisdiction and venue of such court for the Southern District as the sole and exclusive forum, ***unless such court is unavailable***, for the resolution of claims by the parties arising under or relating to this agreement.

*Id.* at *1 (emphases added).

The *Troy* court found that because the matter involved two Delaware entities and no federal question, it was "indisputably clear that a federal tribunal could not adjudicate th[e] action," and therefore the Southern District of New York was "unavailable" per the terms of the forum selection clause. *Id.* at *3. The court further reasoned that because the forum selection clause included unavailability language but failed to specifically address the contingency presented in the case (*i.e.*, if the federal forum lacked subject matter jurisdiction over the dispute), "the parties intended to return themselves to the default position of being able to sue in a procedurally appropriate venue of their own choosing." *Id.* at *4. Accordingly, the court denied the motion to dismiss and allowed the plaintiff to maintain its suit in Delaware state court. In doing so, it clarified that it was "*not setting aside or refusing to enforce the forum selection clause*"; instead, it was "simply recognizing that the contractual language used chose the United States District Court for the Southern District of New York and that court is unavailable." *Id.* at *4 (emphasis added).

*Troy* is distinguishable in a number of respects. First, this is not a case where the designated forums would be unable to adjudicate the matter for lack of subject matter jurisdiction; rather, the first amended complaint raises both state and federal claims arising out of an agreement to sell the stock of a Delaware corporation. More to the point, however, the SPA here expressly contemplates the discrepancy raised by Fintech; indeed, if the Delaware Chancery Court "declines to accept jurisdiction over a particular matter," the parties may proceed in "any

6

federal court within the State of Delaware." (SPA § 5.11(b).) Accordingly, this is not a case in which the parties effectively failed to "effectuate a selection" of a forum as Fintech suggests.[3] (*See* Opp. Br. at 7, 8.)

In reply, defendants draw the Court's attention to *Breslow v. Klein*, 2018 WL 3031854 (D.N.J. June 19, 2018), where Judge Vazquez addressed "a nearly identical forum selection clause in the face of this exact legal challenge." (Reply Br. at 5.) In *Breslow*, the plaintiffs sued in the District of New Jersey alleging fraud and fraudulent inducement, breach of contract, and federal securities fraud. The defendant moved to dismiss the complaint based on *forum non conveniens* in light of the forum selection clause in the parties' corporate operating agreement, which provided that any proceedings "***arising out of or relating to this Agreement, the transactions contemplated hereby*** or the relationships among the Parties hereunder and any disputes with respect to the foregoing ***shall be commenced and prosecuted exclusively in the Court of Chancery and any appellate courts therefrom within the State of Delaware (or if the Chancery Court declines to accept jurisdiction over a particular matter, any state or federal court within the State of Delaware)[.]***" 2018 WL 3031854, at *5. The plaintiffs opposed the motion to dismiss on various grounds, including that the Delaware Chancery Court could not hear their securities fraud claims because "federal courts have exclusive jurisdiction over [them]." *Id.* at *12. Reasoning that the forum selection clause "expressly indicate[d] that a Delaware federal court is an acceptable forum if the Delaware Court of Chancery declines

---

[3] Fintech also cites *Kemper Mortg., Inc. v. Russell*, 2006 WL 355613, at *3 (S.D. Ohio Feb. 16, 2006), in which the Southern District of Ohio declined to enforce a forum selection clause that identified a forum that "does not exist"—specifically, the "Circuit Court of Montgomery County, Ohio." Putting aside *Kemper*'s questionable precedential value, it is distinguishable because the SPA's forum selection clause identifies legitimate courts.

jurisdiction," Judge Vazquez accepted the defendant's invitation to transfer the matter to the United States District Court for the District of Delaware. *Id.* at \*12.

Here, too, the Court is faced with a forum selection clause that unequivocally mandates litigation of claims arising under the parties' SPA in the Delaware Chancery Court, but allows for the matter to proceed in a Delaware federal court if the state court declines to accept jurisdiction. Should the Delaware Chancery Court determine that it is an "unavailable" forum, the parties expressly assented to an alternative forum in the United States District Court for the District of Delaware. The Court cannot disregard that election. *See Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1080 (Del. Ch. Aug. 17, 2021) (recognizing that courts are to interpret forum selection clause's plain language in a manner that "effectuate[s] the parties' intent" (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006))).[4] Accordingly, litigation in this forum is improper.[5]

While the Court is persuaded by Judge Vazquez's reasoning in *Breslow*, this case is distinguishable in one key respect: defendants have not requested a transfer. As the SPA's forum selection clause designates the Delaware Chancery Court as the primary forum, it would be

---

[4] While Fintech asks the Court to effectively ignore certain phrases in the forum selection clause, it also encourages the Court to overemphasize others. For example, Fintech argues that the Court cannot disregard the phrase "declines to accept jurisdiction" as mere surplusage, as the Delaware Chancery Court can never "decline" to accept jurisdiction where it "has no jurisdiction to begin with." (Opp. Br. at 10-11.) However, accepting that overly-formulaic interpretation would allow Fintech to defeat the forum selection clause through artful pleading. *See Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1253 (Del. Ch. 2010) (observing that "Courts in Delaware and other jurisdictions have found that [a] forum selection clause should not be defeated by artful pleading of claims" (internal citations omitted)). To the extent Fintech is concerned that it will be hamstrung from presenting its Exchange Act claims in any forum, defendants point out in reply that if the Delaware Chancery Court cannot assert jurisdiction over Fintech's claims, then "the case would either be removed or re-filed in the Delaware District Court." (Reply Br. at 5.)

[5] Having so ruled, the Court need not reach defendants' remaining arguments.

inappropriate to *sua sponte* transfer this case to the United States District Court for the District of Delaware.  *See Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) ("Transfer is not available . . . when a forum selection clause specifies a non-federal forum."). Accordingly, dismissal is the appropriate remedy.

**IV.    Conclusion**

For the foregoing reasons, defendants' motion to dismiss (D.E. 25) is granted.  An appropriate order will issue.

Date: December 7, 2022

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J

9